CITY OF WAUKEE, Alice Nizzi, Joseph Nizzi, Donna Nizzi, Mary Ceretti, Perry Lounsbury, Deleana Lounsbury, Marvin W. Jamison, Frances M. Jamison, George Stanich, and Patricia Stanich, Appellees,

v.

CITY DEVELOPMENT BOARD, Appellant,

City of Clive, Iowa, Intervenor–Appellant.

No. 97–1251.

Supreme Court of Iowa.

March 24, 1999.

Thomas J. Miller, Attorney General, and Heather Adams and Christine Scase, Assistant Attorneys General, for appellant City Development Board.

L.R. Voigts, James C. Wine, and Thomas H. Walton of Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for intervenor-appellant city of Clive.

Paul E. Huscher, Des Moines, for appellees.

Considered by LARSON, P.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

LAVORATO, Justice.

This appeal arises out of a dispute between the cities of Clive and Waukee and involves the annexation of certain land in Dallas County, Iowa. The City Development Board (Board) approved Clive's voluntary annexation application over Waukee's voluntary annexation application. Waukee and owners of property included in Waukee's application petitioned the district court for judicial review. Clive intervened in the proceeding. The district court reversed, concluding Clive's application did not comply with the annexation statute, Iowa Code § 368.7(1) (1995), and remanded the case to the Board for reconsideration and determination consistent with its ruling. Clive and the Board appealed, contending Clive's voluntary annexation application did comply with the statute. We agree and reverse and remand with directions.

I. **Facts and Proceedings.**

Iowa Code chapter 368 governs the annexation of land in Iowa. The Board, a state administrative agency, oversees the annex-

ation of property in Iowa if the land is in an urbanized area. *See* Iowa Code §§ 368.9, 368.7(3). An "urbanized area" means any area of land within two miles of the boundaries of a city. *See* Iowa Code § 368.1(15). The Board has five members, four of whom are drawn from cities and counties throughout the state, and one of whom is appointed to represent the general public. *See* Iowa Code § 368.9.

During the past several years, Clive and Waukee have been involved in annexation proceedings before the Board. *See City of Waukee v. City Dev. Bd.*, 514 N.W.2d 83 (Iowa 1994). Though those proceedings dealt with different applications for annexation, those applications did include annexation of some land in the same area involved here, notably land that is the center of this dispute—the Knapp/Koethe and Nizzi properties.

On July 27, 1995, Clive filed an application for approval of voluntary annexation of land (approximately 538.5 acres) located in Dallas County. The owners of 89.8 percent of the property in this area requested annexation; the remaining 10.2 percent did not. The Knapp/Koethe property and the Croci/Van Dorn properties are the largest voluntary parcels. The Knapp/Koethe property is contiguous to the largest involuntary parcel— the Nizzi property. Clive included in its application the Nizzi property, which is contiguous to the Croci/Van Dorn property, which in turn, is contiguous to the west/northwest Clive boundary line.

Without the Nizzi property, Clive could not annex the Knapp/Koethe property under its proposed annexation application. This is because without the Nizzi property, the Knapp/Koethe property would be an island. *See* Iowa Code § 368.7(1) (permitting filing of annexation application by all owners of land in a territory *adjoining* a city), § 368.7(2) (prohibiting annexation that would create an island).

On August 1, 1995, Waukee filed a voluntary annexation application for a smaller area (about eighty acres). Waukee included the Nizzi property in this voluntary annexation application. Later, Waukee filed an involuntary annexation application for a much larger area that included most of the land that was within Clive's voluntary annexation application. Waukee's involuntary annexation application is not involved in this appeal.

Exhibit A shows Clive's voluntary annexation area and Waukee's voluntary annexation area with the relevant parcels and other landmarks labeled.

Exhibit A

On October 11, 1996, following a public hearing, the Board determined that Clive's voluntary annexation application was in the public interest and approved it for the most part. (Those parcels of land not approved are not an issue in this appeal.) Because of the Clive annexation, the Board then approved only a small portion of Waukee's voluntary annexation application.

Waukee and the owners of property included in Waukee's application petitioned the district court for judicial review. Clive intervened. The district court reversed the Board's decision. The court determined that Clive's application did not comply with Iowa Code section 368.7(1) because the voluntary property Clive sought to annex was not "adjoining" to Clive pursuant to the statute's requirement. The court also determined that the Board's decision to include nonconsenting landowners in the Clive application to make a more uniform boundary was not supported by substantial evidence.

The Board and Clive appeal. They contend Clive's application complied with section 368.7(1) and that the annexation would make a more uniform boundary. For convenience, in the balance of this opinion, we shall refer

to the Board and Clive collectively as Clive, unless otherwise indicated.

## II. Scope of Review.

Iowa Code section 368.22 governs our scope of review. That provision and those of Iowa Code chapter 17A (with certain exceptions not relevant here) are the "exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of that agency action." Iowa Code § 368.22. Section 368.22 limits our review to questions "relating to jurisdiction, regularity of proceedings, and whether the decision appealed from is arbitrary, unreasonable, or without substantial supporting evidence." *Id.*

■ Under chapter 17A, when we review a district court decision, we ask only whether the district court correctly applied the law. If our conclusions are the same as the district court's, we affirm. If our conclusions are different, reversal may be required. *Dickinson County v. City Dev. Comm.*, 521 N.W.2d 466, 468 (Iowa 1994).

■ Here, Clive challenges the district court's interpretation of a statute and the court's conclusion that substantial evidence did not support a finding of the Board. Thus, we need to decide whether the district court correctly applied the law and whether substantial evidence supported the Board's finding. Evidence is substantial if a reasonable mind could accept it as adequate to reach the same finding. *Id.*

## III. Whether City of Clive's Voluntary Annexation Application Complied With Iowa Code Section 368.7(1).

Clive contends the district court erred when it determined that the city of Clive's application for voluntary annexation did not comply with the requirements of section 368.7(1). This section pertinently provides:

All of the owners of land in a territory adjoining a city may apply in writing to the council of the adjoining city requesting annexation of the territory. Territory comprising railway right-of-way or territory comprising not more than twenty percent of the land area may be included in the application without the consent of the

owner to avoid creating an island or to *create more uniform boundaries.*

*Id.* (emphasis added).

Subsections 4 and 14 of Iowa Code section 368.1 define "adjoining" and "territory" respectively:

1. "Adjoining" means having a common boundary for not less than fifty feet. Land areas may be adjoining although separated by a roadway or waterway.

14. *"Territory"* means the land area or areas proposed to be incorporated, annexed, or severed, *whether or not contiguous to all other areas proposed to be incorporated, annexed, or severed.* Except as provided for by an agreement pursuant to chapter 28E, "territory" having a common boundary with the right-of-way of a secondary road extends to the center line of the road.

*Id.* (emphasis added).

### A. District court's requirement that the Knapp/Koethe property adjoin the city of Clive.

Interpreting the first sentence of section 368.7(1), the district court concluded:

The first sentence of section 368.7(1) requires that a voluntary annexation be requested by *adjoining* property owners. The property owners of Section 22 [the Knapp/Koethe property] who petitioned for incorporation into Clive were not owners of territory adjoining Clive. A factual finding to the contrary doesn't change the obvious physical fact. The petition did not meet the requirements of the Code and the Board did not have jurisdiction to consider it.

■ As a preliminary matter, we agree with Clive that the district court incorrectly considered the issue as a matter of the Board's jurisdiction. We have made it abundantly clear that whether an annexation application complies with the statute is not a matter of jurisdiction:

The Board clearly has jurisdiction over voluntary annexation proceedings. Iowa Code chapter 368 created the Board for the express purpose of handling city development proceedings, including annexations. . . . Before it can approve an annexation application, the Board must

determine whether there is substantial compliance with the statute. It can only do this by exercising its jurisdiction and examining the application. If the application does not substantially comply with statutory requirements, the Board must deny the application.

*Gorman v. City Dev. Bd.*, 565 N.W.2d 607, 609 (Iowa 1997) (citation omitted).

■ Thus, the decisive issue is whether the city of Clive's voluntary application substantially complied with section 368.7(1). The Board has and must in fact exercise jurisdiction to make this determination. Substantial compliance means "compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." *Superior/Ideal, Inc. v. Board of Review*, 419 N.W.2d 405, 407 (Iowa 1988).

■ Whether the application substantially complied with section 368.7(1) turns on our interpretation of that provision. Our ultimate goal in interpreting statutes is to give effect to legislative intent. *Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996). We give precise, unambiguous language its plain and rational meaning in light of the subject matter. *Id.* We resort to rules of statutory construction only when the explicit terms of a statute are ambiguous. "A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute." *Id.*

■ Contrary to the district court's interpretation, we agree with Clive that the plain language of the first sentence in section 368.7(1) does not require that each parcel of property within the annexation area adjoin the city to which annexation is sought. Rather, as Clive suggests, the first sentence requires only that the entire land area to be annexed share a common boundary with the city to which annexation is sought.

We reach that conclusion because the word "adjoining" immediately follows and modifies the term "territory" in the first sentence of section 368.7(1). In interpreting statutes, we have consistently reasoned that qualifying words and phrases ordinarily refer only to the immediately precedent antecedent. *State v. Kluesner*, 389 N.W.2d 370, 371 (Iowa 1986). As mentioned, section 368.1(1) defines "adjoining" to mean "having a common

boundary for not less than fifty feet," and section 368.1(14) defines "territory" to mean "the land areas proposed to be ... annexed ... whether or not contiguous to all other areas to be ... annexed."

Although section 368.7(1) does not expressly mention that parcels within the annexation territory be contiguous to one another, we think subsection 2 of section 368.7 imposes such a requirement. Subsection 2 prohibits approval of any annexation application "which would create an island." Iowa Code § 368.7(2).

Our interpretation is not only consistent with the plain meaning of the statute but also with general annexation principles:

While the general rule is that land cannot be annexed to a city or town unless it is contiguous thereto, it is not necessary that each and every tract of land sought to be annexed shall be contiguous to the municipality. If all of the tracts are contiguous to each other, and one of them is contiguous to or joins the municipality, that is sufficient.

56 Am.Jur.2d *Municipal Corporations* § 69, at 126 (1985).

Here, the territory that the city of Clive seeks to annex adjoins the city of Clive by more than fifty feet. That territory, of course, encompasses all of the voluntary and involuntary parcels mentioned. Although not all of the parcels adjoin or share a common boundary with the city of Clive, all of the parcels are contiguous to each other in the sense that there is no parcel that does not share a boundary with a parcel included in the territory to be annexed. In addition, one of the parcels is contiguous to the city of Clive.

The language "whether or not contiguous to all of the areas proposed to be incorporated" in the definition of "territory" covers the Knapp/Koethe property. That property is not contiguous to the Croci/Van Dorn property which adjoins the city of Clive's boundary. For that reason the Knapp/Koethe property is not "contiguous to all of the areas proposed to be incorporated." The Knapp/Koethe property, however, is contiguous to the Nizzi property, which in turn is contigu-

ous to the Croci/Van Dorn property. It follows that the Knapp/Koethe property meets the requirement that all parcels within the territory be contiguous to each other because that property (Knapp/Koethe) shares a common boundary with property (Nizzi) included in the territory to be annexed.

The Board recognized this contiguity issue when it ruled as follows:

> Including approximately 40 acres of land owned by Alice Nizzi and Joe Nizzi without their consent, allows approximately 360 acres owned by Knapp/Koethe to be contiguous to the other land being proposed for annexation.

Contrary to the district court's interpretation, we conclude the city of Clive's voluntary annexation application meets the requirement of the first sentence of section 368.7(1).

**B. The district court's interpretation that section 368.7(1) does not permit the inclusion of property of nonconsenting owners in the annexation territory for the purpose of providing contiguity.** As mentioned, the second sentence of section 368.7(1) says that "territory comprising not more than twenty percent of the land area may be included in the application without the consent of the owner to avoid creating an island or to create more uniform boundaries." The district court interpreted the sentence this way:

> The Board used the second sentence of section 368.7 to negate the requirement that the petition be signed by the adjoining property owners. The second sentence does not say, nor can it be interpreted to say, that the petitioning property owner need not be contiguous to the city to which annexation is to be made. The second sentence permits only the *inclusion* of nonconsenting land in the area to be annexed and then only to avoid *creating* an island or to *create* more uniform boundaries. The application of the second sentence, or 20% rule, presupposes a valid voluntary petition independent of the inclusion of the territory owned by nonconsenting parties.

Thus, according to the district court, a voluntary annexation application to be valid under section 368.7(1) must comply with two conditions: First, each parcel within the annexation territory must share a common boundary of not less than fifty feet with the annexing city. Second, the property of the nonconsenting owners may be included in the application *solely* to avoid creating an island or to create more uniform boundaries. Contrary to the district court's first condition, we have already concluded that not every parcel within the annexation territory must share a common boundary with the annexing city.

As to the second condition, the district court is saying that there can be *only* two reasons to include property of nonconsenting owners: either to avoid creating an island or to create more uniform boundaries. If the inclusion happens to serve another purpose, then under the district court's interpretation the application must fail. Carried to its logical conclusion, such an interpretation would doom a voluntary annexation application if the inclusion of the property of nonconsenting owners was also intended to carry out such laudable things as (1) making the territory contiguous; (2) providing the most cost-effective method of providing sewer or other utilities to the territory; and (3) accommodating projected population growth.

Such an interpretation would also require the Board to determine as a fact what really motivated an annexing city to include property of nonconsenting owners in its voluntary annexation application. There is no such requirement in the statute. We agree with Clive that whether the inclusion of property of nonconsenting owners avoids an island or creates more uniform boundaries depends on an objective, not a subjective, finding of fact.

Statutes are presumed to intend a reasonable result. *See* Iowa Code § 4.4(3). The district court's interpretation is unreasonable and not warranted by the statutory language. Suffice it to say that if the inclusion of property of nonconsenting owners in fact avoids creating an island or provides for more uniform boundaries, then the voluntary annexation application meets the twenty percent rule in the second sentence of section 368.7(1).

**C. The district court's conclusion that the Board's decision that the inclusion of property of nonconsenting owners was necessary to create a more uniform bound-**

ary is not consistent with section 368.7(1) and not supported by substantial evidence. The district court further stated:

> The Board's decision that the inclusion of the [Nizzi] property was necessary to create a more uniform boundary is not consistent with the statutory requirement, nor is it supported by substantial evidence.

As Clive suggests, this statement by the court and its reasoning thereafter raises two questions. First, what does the statute mean when it says that property of nonconsenting owners may be included "to create more uniform boundaries?" Second, was the Board's decision that the inclusion of the Nizzi property created more uniform boundaries supported by substantial evidence?

 1. Including property of nonconsenting owner to create more uniform boundaries. The second sentence of section 368.7(1) provides that "[t]erritory ... comprising not more than twenty percent of the land area may be included in the application without the consent of the owner to avoid creating an island or to create more uniform boundaries." The Board found as a fact that the inclusion of the Nizzi property did create more uniform boundaries:

> Including the nonconsenting owners' land to allow the Knapp/Koethe property to be annexed creates a more uniform boundary than an alternative proposal suggested by Clive to allow the Knapp/Koethe property to be annexed.

The alternative proposal was a horseshoe type of annexation that would start from the Croci/Van Dorn property, proceed north beyond Meredith Drive, and then west and then south to the Knapp/Koethe property. The city of Clive proposed this alternative because Waukee had suggested it. The Board concluded the boundary that would exist if the annexation were granted was more uniform than the proposed alternative, and as Clive suggests, including the Nizzi property "made the difference."

The district court rejected the Board's comparison. The court went on to conclude that the comparison pursuant to the statute should be restricted to the boundaries of the annexation territory with and without the inclusion of the property of the nonconsenting owners:

The language of the statute requires the annexation at hand to have *created* the island or the irregular boundary to permit invoking the nonconsenting landowner rule. It does not permit the inclusion of the territory of a nonconsenting owner to solve some hypothetical future problem. Applied to the present factual situation, the annexation of the Section 22 property by Clive couldn't *create* an irregular boundary unless it was considered and accepted as a valid voluntary petition. It can't be considered as such unless the nonconsenting landowner rule is invoked, because otherwise, there is no adjoining property. The nonconsenting landowner rule cannot be invoked unless the act of incorporating creates an irregular boundary. The bootstrapping approach, which is necessary to support the decision of the Board, is totally inconsistent with the statute. The petition must by necessity be a valid voluntary petition as prescribed by the first sentence of section 368.7(1) and excluding the nonconsenting property, before the exception of the second sentence can be applied.

The problem with the district court's restrictive interpretation is that the statute does not say the comparison has to be restricted to the boundaries of the annexation territory with and without the inclusion of the property of nonconsenting owners. As Clive suggests, the district court's restrictive interpretation would necessitate adding the following italicized words to the second sentence of section 368.7(1):

> Territory ... comprising not more than twenty percent of the land area may be included in the application without the consent of the owner ... to create more uniform boundaries *than the boundaries of the annexation territory if the land of the nonconsenting owners were not included.*

We have recognized that words may be added to a statute if necessary to effectuate legislative intent or manifested statutory meaning. However, we have also said that "this is a construction which is to be exercised with unusual caution and is not warranted unless the omission from the text is plain." *Eggman v. Scurr,* 311 N.W.2d 77, 81

(Iowa 1981). We conclude the district court's construction is not warranted in this case.

The Board's approach does not require addition of statutory language. The approach flows freely from the comparative language "to create more uniform boundaries." It is also consistent with our recognition that "legislation establishing the method by which municipal corporate boundaries may be extended is to be liberally construed in favor of the public." *City of Des Moines v. City Dev. Bd.*, 473 N.W.2d 197, 200 (Iowa 1991).

An interpretation that does not unduly restrict the Board's choice of comparable boundaries acknowledges the Board's expertise and its role in overseeing long-range planning and orderly development of cities. *See* Allan D. Vestal, *Iowa Land Use and Zoning Law* § 9.71(a), at 349 (1979) (stating that legislature's express purpose in creating the Board was "to permit better long-range planning and orderly development in the interest of all cities"). Recently, we recognized that "[t]he entire statutory scheme of chapter 368 demonstrates an intent to have the City Development Board oversee and approve orderly city developments." *City of Des Moines*, 473 N.W.2d at 199.

■ 2. **Substantial evidence to support the Board's boundary decision.** As Clive suggests, the Board was confronted with compelling evidence that the annexation of the Knapp/Koethe property to Clive was in the public interest and that it would not be in the public interest to annex that property to Waukee. The district court even acknowledged this when it observed: "The Court is respectful of the expertise displayed by and the work done by the Board, and the decision to favor Clive as being better able to serve the subject area is not in question." Nevertheless, the court found the city of Clive's voluntary annexation application was invalid based solely on a strict statutory interpretation, which we now conclude was erroneous.

In the face of the compelling evidence favoring the city of Clive's annexation application, the Board chose to favor that city's application to annex the Knapp/Koethe property.

The Board then had to make the boundary comparisons. We have already determined that it was proper for the Board to use the alternative proposal as a comparison. The Board had the benefit of an opinion from a qualified civil engineer that the boundaries created by the inclusion of the Nizzi property were more uniform and sensible. He stated in an affidavit that the

[i]nclusion of the Nizzi property in the Clive annexation application helps to create a more uniform and sensible municipal boundary. Based upon the city of Waukee's statement that it is not interested in the property north of Meredith Drive, the City of Clive has examined the possibility of annexing property north of Meredith Drive, and swinging around to the south, to reach the Knapp/Koethe property. This alternative is less desirable in terms of the extension of utilities to the Knapp/Koethe property, and in terms of providing other city services generally. This alternative would create more unusual city boundaries.... The [city of Clive] has held off on this approach ... because these boundaries are less desirable from a planning and service standpoint. The more uniform boundaries set forth in Clive's annexation application, which "line up" more squarely with the Knapp/Koethe property, make better sense from a planning and service standpoint.

We agree with Clive that whether one boundary is more uniform than another is a judgment call for the Board to make. *See Burns v. Board of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993) ("The administrative process presupposes judgment calls are to be left to the agency."). Under this record, we cannot say that the Board's boundary decision was not supported by substantial evidence.

We conclude the Board's interpretation of section 368.7(1) and the approach it took to the boundary comparisons were consistent with the role of the Board, the statutory language, and the public interest. The district court erred in concluding otherwise.

■ As a final matter, the district court recognized the presumption of validity for voluntary annexation approval. The court asserted that the Board ignored the wishes of the Nizzi property residents: those residents had requested that their property be

annexed to Waukee. The district court cites as its support Iowa Code section 368.6, which states:

It is the intent of the general assembly to provide an annexation approval procedure which gives due consideration to the wishes of the residents of territory to be annexed, and to the interests of the residents of all territories affected by an annexation. The general assembly presumes that a voluntary annexation of territory more closely reflects the wishes of the residents of territory to be annexed, and, therefore, intends that the annexation approval procedure include a presumption of validity for voluntary annexation approval.

As an initial matter, the above presumption is not irrebuttable, especially if the Board chooses the annexation to the city that most benefits and serves the public interest. We conclude the Board did not ignore the wishes of the Nizzi property residents. Rather, the record is clear that the need for more uniform boundaries and the interests of *all* the residents in the proposed annexed territory simply outweighed the needs and wishes of the Nizzi property residents. Although not an issue in this appeal, the record is also clear that overall the city of Clive could provide better and more efficient services to the territory than could the city of Waukee.

### IV. Disposition.

In sum, we conclude the Board substantially complied with the requirements of Iowa Code section 368.7(1) when it approved the city of Clive's voluntary annexation application. The Board has fulfilled its role in serving the interests of all citizens affected by the proposed annexation application. Additionally, substantial evidence supports the Board's finding that the inclusion of the property of nonconsenting owners created more uniform municipal boundaries for the city of Clive than the boundaries that would have been created by the alternative proposal. We must therefore reverse the district court's ruling and affirm the Board's decision. We remand the case to the district court for an order dismissing the petition for judicial review.

REVERSED AND REMANDED WITH DIRECTIONS.