John Francis ANDERSON, Appellee,

v.

The CITY DEVELOPMENT
BOARD OF the STATE
of Iowa, Appellant,

City of Des Moines, Intervenor–
Appellant.

No. 99–0932.

Supreme Court of Iowa.

April 25, 2001.

Rehearing Denied Aug. 27, 2001.

Thomas J. Miller, Attorney General, and Christie J. Scase, Assistant Attorney General, for appellant City Development Board.

Mark Godwin, Deputy City Attorney, Des Moines, for appellant City of Des Moines.

Frank Murray Smith of Frank M. Smith Law Office, Des Moines, for appellee.

SNELL, Justice.

There are three parties involved in this appeal. The City Development Board of the State of Iowa (Board) is the appellant. The City of Des Moines (DSM) intervened in these proceedings and is also an appellant. The citizens of the unincorporated territory of "West Carlisle," led by John Anderson, are the appellees. At the agency level, the Board dismissed West Carlisle's involuntary petition to be annexed into Carlisle. On judicial review, the district court reversed this dismissal. We reverse the district court's decision and remand for a reinstatement of the petition's dismissal.

I. Factual Background and Procedure

In 1990, DSM and the City of Carlisle executed a moratorium agreement which precluded annexation of West Carlisle by Carlisle for a period of ten years. Pursuant to the agreement, Carlisle agreed to prevent any voluntary annexation of West Carlisle and decline permission for annexation of this area into Carlisle.

In 1998, Anderson and others of West Carlisle were interested in being annexed by Carlisle to avoid being involuntarily annexed by DSM. Anderson filed a petition to voluntarily annex West Carlisle into Carlisle. Citing the moratorium agree-

ment, Carlisle refused to annex West Carlisle. Anderson then filed a petition with the state Board to involuntarily annex West Carlisle into Carlisle. The Board found that the moratorium agreement between Carlisle and DSM for this area was dispositive. Because annexation into Carlisle would violate the terms of the agreement, the Board dismissed West Carlisle's petition.

The Board determined that DSM and Carlisle had statutory authority to enter into such agreement. *See* Iowa Code § 368.4 (1997). Such authority imposed their agreement on those who may wish to contravene it, including Anderson and West Carlisle. The Board found that a contrary holding would violate the moratorium agreement. The Board unanimously upheld its determination on rehearing. Anderson then sought judicial review of the Board's dismissal of the petition. Anderson argued that a contract between Carlisle and DSM could not prevent a nonparty from seeking annexation—the contract should only limit the actions of DSM and Carlisle.

Anderson further argued that the agreement violated the due process and equal protection rights of the citizens of West Carlisle. He also alleged that the moratorium was invalid because statutory procedures were not followed. The district court passed no judgment on either issue. Instead, the court determined that if the Board had allowed West Carlisle to involuntarily annex itself into Carlisle, the agreement would not have been violated. Under standard contract law, the court held that only Carlisle or DSM could violate their own agreement. A nonparty to the moratorium could neither violate it nor be bound by it.

Both the Board and DSM appeal this decision. They argue: (1) Such a decision makes the statutory moratorium agreement provision useless; (2) Ordinary contract principles do not govern these type of agreements; (3) The procedural challenge made by Anderson and West Carlisle was waived by their failure to assert it before the Board; and (4) The constitutional arguments do not pass muster. DSM makes two additional arguments. First, it suggests the district court did not apply the proper standard of review to make its decision. Second, it seeks a ruling that unincorporated territories have no authority to involuntarily annex a city.

## II. Scope and Standard of Review

■ Statutory law dictates how we review appeals from the City Development Board. Iowa Code § 368.22.

> The court's review on appeal of a decision is limited to questions relating to jurisdiction, regularity of proceedings, and whether the decision appealed from is arbitrary, unreasonable, or without substantial supporting evidence. The court may reverse and remand a decision of the board or a committee, with appropriate directions.

*Id.* We are limited in our review of the district court's reversal to only those issues initially addressed by the agency. *Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Human Servs.*, 613 N.W.2d 674, 676 (Iowa 2000) (citing *Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 465 N.W.2d 280, 283 (Iowa 1991)).

■ Upon our review of the district court's reversal, we simply look to see if the district court applied the correct standard. *City of Waukee v. City Dev. Bd.*, 590 N.W.2d 712, 716 (Iowa 1999). "Thus, we need to decide whether the district court correctly applied the law and whether substantial evidence supported the Board's finding." *Id.* There is substantial evidence "if a reasonable mind could ac-

cept it as adequate to reach the same finding." *Id.*

### III. Issues on Appeal

DSM argues that the district court applied an improper standard of review. Iowa Code section 17A.19(8) cannot be considered when the district court is reviewing the Board's decision under section 368.22. *See* Iowa Code § 368.22(3). It is clear the district court based its review on the provisions found in section 17A.19(8). Although the district court failed to employ the standard enunciated in section 368.22, we could still uphold this decision if we agree the Board's decision was unreasonable because it was based upon an erroneous interpretation of the law. Accordingly, this is not reversible error.

### A. The Moratorium Agreement

■ The involuntary petition at issue here seeks to have Carlisle annex West Carlisle. Carlisle has a moratorium agreement with DSM agreeing to refrain from annexing West Carlisle. Statutory authority for a moratorium agreement is found in Iowa Code section 368.4. This provision states:

> A city, following notice and hearing, may by resolution agree with another city or cities to refrain from annexing specifically described territory for a period not to exceed ten years and, following notice and hearing, may by resolution extend the agreement for subsequent periods not to exceed ten years each. Notice of a hearing shall be, served on the board, and a copy of the agreement and a copy of any resolution extending an agreement shall be filed with the board within thirty days of enactment. *If such an agreement is in force, the board shall dismiss a petition or plan which violates the terms of the agreement.*

*Id.* § 368.4 (emphasis added).

Anderson argues that section 368.4 does not prevent West Carlisle from petitioning to be involuntarily annexed by Carlisle because it is not a party to the moratorium agreement. It is true that section 368.11 gives a territory the right to file an involuntary petition. However, when a territory's involuntary petition is granted, the city would then be required to annex the territory. As such, by forcing Carlisle to annex West Carlisle, Carlisle would likewise be forced to violate the moratorium agreement.

Anderson places great emphasis on the general contract premise that those not a party to a contract cannot be bound by its terms. *See Herington Livestock Auction Co. v. Verschoor*, 179 N.W.2d 491, 494 (Iowa 1970). However, this premise is not applicable here. Under the above interpretation, the moratorium agreement does not bind a nonparty—it binds Carlisle to refrain from annexing the prohibited territory. If the Board had granted West Carlisle's petition, Carlisle could not have kept its agreement with DSM. Under the authority of section 368.4, the Board was required to dismiss West Carlisle's petition.

The effect of a moratorium agreement can be analogized to that of a covenant not to compete. A valid covenant not to compete does not allow a party to it to do business with those he might otherwise have utilized had no agreement existed. This is not the same thing as binding a nonparty to the agreement—the party to the agreement is simply not able to make himself available for the benefit of a nonparty. This may have a negative impact on a nonparty, but it does not have a binding effect. Here, Carlisle is not able to avail annexing procedures to benefit

West Carlisle without violating the moratorium agreement. The district court's conclusion, that dismissal of West Carlisle's petition would impermissibly bind a nonparty to the moratorium agreement, is incorrect.

The district court felt a contrary interpretation would deprive a territory of its statutory right to seek involuntary annexation and that section 368.11 would be useless whenever a moratorium agreement was present. It concluded that the legislature could not have intended such a result. An examination of the legislative history of section 368.4 reveals that the legislature purposely broadened its language in 1972. 1972 Iowa Acts ch. 1088, § 28. The moratorium agreement provision previously read:

> After the adoption of such resolutions and the execution of such agreement by all of such agreeing cities and towns, *no agreeing city or town shall commence any annexing proceedings* under the provisions of this section as to any specifically described territory which is the subject of said agreement. . . .

Iowa Code § 362.26(7) (1971) (emphasis added). This language was changed to read as it does today: "If such an agreement is in force, the board shall dismiss a petition or plan which violates the terms of the agreement." Iowa Code § 368.4 (1997). The language is no longer limited to a restriction on the actions of the parties to the agreement, but also requires dismissal of any petitions that would offend the agreement. The intent to preclude involuntary petitions that force a city to violate its agreement is clear.

Perhaps realizing that the petition might be barred by the moratorium agreement, Anderson endeavors to recharacterize the petition as an attempt by West Carlisle to annex Carlisle. This prompts the question whether a territory has the power to an-

nex a city. Iowa Code section 368.11 gives a territory the authority to seek involuntary annexation, *i.e.,* to force a city to annex the territory. However, no section in chapter 368 provides West Carlisle with the authority to annex Carlisle. In fact, chapter 368 provides a definition of annexation: " 'Annexation' means the addition of territory to a city." *Id.* § 368.1(2). This definition does not include the addition of a city to a territory. As such, this characterization of West Carlisle's petition cannot provide relief.

### B. Remaining Issues

On appeal, Anderson argues that the moratorium agreement was invalid because proper procedures were not followed. Anderson also makes several constitutional arguments. The district court did not resolve these claims.

#### 1. Alleged Procedural Errors

The alleged errors include: (1) a typographical error in the description of the land subject to the moratorium agreement presented to the Des Moines City Council and in the notice published by Carlisle, (2) inadequacy of the description of the affected land in the actual moratorium agreement, and (3) failure to provide notice to the Board as required to effectuate the moratorium agreement. We note that "a failure to comply with every word of our annexation statutes is not fatal. Substantial compliance with prescribed procedural law is sufficient. . . ." *City of Des Moines v. City Dev. Bd.,* 473 N.W.2d 197, 200 (Iowa 1991).

First, in order to eviscerate the validity of the agreement, typographical errors must be substantial. *Gorman v. City Dev. Bd.,* 565 N.W.2d 607, 610–11 (Iowa 1997). In *Gorman* we found that the omission of two-thirds of the affected territory invalidated the annexation. In

the instant case, the errors were insignificant as the territory was adequately described and an accurate diagram provided. The error stems not from an improper description of the territory, but from an inconsistent statement as to what direction the territory lays from each city. This error was inconsequential to the notice of the citizens of West Carlisle as each map clearly showed what directions were implicated. Further, Anderson makes no cogent argument that this inconsistency had a prejudicial effect on the citizens of West Carlisle.

■ Second, the moratorium agreement itself did provide a somewhat ambiguous description of the land in question. However, when combined with the maps provided, such a description clearly alerts those in the affected area that their land falls within the agreement. In effect, Anderson argues the description was insufficient. We have said that insufficiency is not enough to invalidate the agreement. *Id.* at 611. Rather, a showing that the description is in fact incorrect is required. *Id.* (citing *City of Muscatine v. Waters*, 251 N.W.2d 544, 551 (Iowa 1977); *City of Clinton v. Owners of Prop. Situated Within Certain Described Boundaries*, 191 N.W.2d 671, 674 (Iowa 1971)).

■ Third, annexation law requires that two notices be sent to the City Development Board to effectuate a valid moratorium agreement. Iowa Code § 368.4. Here, only one notice could be located. The Board's involvement in this process is incidental to the greater purpose of providing those affected by the agreement with notice. *See id.* § 368.6. The record contains no evidence that the lack of the second notice to the Board, if indeed one was not provided, substantially affected the validity of the agreement. As such, we agree with the appellants that the procedures utilized to enact the moratorium agreement in

question were substantially followed. *City of Des Moines*, 473 N.W.2d at 200–01.

2. Constitutional Claims

■ Anderson argues that our interpretation of the moratorium agreement violates the federal equal protection and due process rights of the citizens of West Carlisle. *See* U.S. Const. amend. V, XIV. We reject the constitutional arguments for two reasons: (1) Those affected by the moratorium agreement were provided notice and a hearing, and (2) Annexation law is governed by statute and any right section 368.11 provides for involuntary annexations does not stem from constitutional property rights. *See, e.g., City of Cedar Rapids v. Cox*, 252 Iowa 948, 959–60, 108 N.W.2d 253, 260 (1961).

■ "The United States Supreme Court has stated that municipal boundaries may be altered without the consent of the inhabitants of the territory affected and 'nothing' in the Federal Constitution is to the contrary." *City of Monticello v. Adams*, 200 N.W.2d 522, 524 (Iowa 1972) (quoting *Hunter v. City of Pittsburgh*, 207 U.S. 161, 179, 28 S.Ct. 40, 47, 52 L.Ed. 151, 159 (1907)). It follows then that there are no constitutional problems when a city decides not to change its boundaries against the wishes of a territory seeking to be annexed. "Although the inhabitants and property owners may ... suffer inconvenience, ... there is nothing in the Federal Constitution which protects them from these injurious consequences." *Hunter*, 207 U.S. at 179, 28 S.Ct. at 46–47, 52 L.Ed. at 159.

Because West Carlisle's petition would require Carlisle to violate its moratorium agreement with DSM, we find that the Board's dismissal was correct. We reverse the decision of the district court and

remand for reinstatement of the petition's dismissal.

**REVERSED AND REMANDED.**