**Francis J. PRUSS and City of Cedar Rapids, Appellants,**

v.

**CEDAR RAPIDS/HIAWATHA ANNEX-ATION SPECIAL LOCAL COMMIT-TEE, City Development Board, and City of Hiawatha, Iowa, Appellees.**

No. 03–1091.

Supreme Court of Iowa.

Sept. 15, 2004.

Francis J. Pruss, Cedar Rapids, *pro se.*

David F. McGuire, City Attorney, Cedar Rapids, for appellant City.

Thomas J. Miller, Attorney General, and Christie J. Scase, Assistant Attorney General, for appellees City Development Board and Special Local Committee.

James P. Craig, Randal J. Scholer, and Brenda K. Wallrichs of Moyer & Bergman, P.L.C., Cedar Rapids, for appellee City of Hiawatha.

STREIT, Justice.

A landowner, drawn to the charm of the bright lights and sewer services of Cedar Rapids, resists the annexing embrace of Hiawatha. A special committee of the City Development Board approved the City of Hiawatha's petition to involuntarily annex Francis Pruss's land, and denied a similar request by Cedar Rapids. Pruss and Cedar Rapids complain the Committee's interpretation of a state annexation law was wrong, because their request was not afforded the "presumption of validity" expressly granted to voluntary annexations. They also argue Cedar Rapids, and not Hiawatha, could better serve the Pruss property. Because we find the Committee acted legally and its decision was supported by substantial evidence, we affirm.

## I. Facts and Prior Proceedings

The events and legal proceedings which gave rise to this appeal span nearly eight years and include two prior appeals to this court. *City of Hiawatha v. City Dev. Bd.,* 609 N.W.2d 496 (Iowa 2000) (*Hiawatha I*); *City of Hiawatha v. City Dev. Bd.,* 609 N.W.2d 532 (Iowa 2000) (*Hiawatha II*). In the interest of judicial economy, we repeat only the most salient details.

In late 1996 and early 1997, a jurisdictional battle royal erupted among three Linn County municipalities after the City of Hiawatha attempted to involuntarily annex over 1600 acres of unincorporated land in Linn County. *See* Iowa Code § 368.11 (2001). The City Development Board contemporaneously received a flurry of applications for voluntary annexation to Cedar Rapids, Robins, and Hiawatha. *See id.* §§ 368.7, 368.9. In one of those applications, Francis Pruss requested annexation of his property to Cedar Rapids.

The Board determined the Hiawatha petition contained common territory with several of the voluntary annexation requests, including the Pruss–Cedar Rapids application. As a consequence, the Board tabled Hiawatha's petition for involuntary annexation while it decided these pending voluntary annexation proposals. *See id.* § 368.7(4) (upon receiving competing voluntary and involuntary annexation requests, the Board "shall approve the application for voluntary annexation, if the application meets the applicable requirements of [chapter 368]," unless certain exceptions apply); *see also id.* § 368.6 (establishing a presumption of validity for voluntary annexations).

The Board denied Pruss's application for voluntary annexation to Cedar Rapids because it would have created an "island" of unincorporated land surrounded by Cedar Rapids, Hiawatha, and Robins. *See id.* § 368.7(3) ("The board shall not approve an application which creates an island."); *see also id.* § 368.1(10) (defining an island as "land which is not part of a city and which is completely surrounded by the corporate boundaries of one or more cities"). The Board notified the parties, however, that the Pruss application could be "converted" into an involuntary petition. *See id.* § 368.7(4) ("If an application for voluntary annexation is not approved pursuant to this section, the board shall cause the conversion of the application to a petition . . . and shall proceed under section 368.14A."). A special local committee would then consider this converted involuntary petition with the competing Hiawatha involuntary petition. *Id.* § 368.14A (providing for appointment of special local committee where two or more pending requests for involuntary annexation concern a common territory). With some modifications the Board approved the other pending voluntary annexation requests.

Hiawatha sought judicial review and in two separate appeals challenged the Board's approval of these other voluntary annexations of land to Cedar Rapids and Robins. The Board postponed action on Hiawatha's petition for involuntary annexation of the Pruss property while these appeals were pending; Hiawatha's petition had territory in common with the challenged annexations. We ultimately affirmed. *See Hiawatha I,* 609 N.W.2d at 497 (voluntary annexation of nearly 1000 acres to Cedar Rapids); *see also Hiawatha II,* 609 N.W.2d at 534 (smaller voluntary annexation to Robins).

After *Hiawatha I* and *Hiawatha II* were decided, the Board notified Cedar Rapids it would resume consideration of Hiawatha's involuntary petition for annexation at an upcoming hearing, at which Cedar Rapids would have the opportunity to discuss a "converted" Pruss application. Cedar Rapids subsequently passed a resolution requesting the Board convert Pruss's denied application for voluntary annexation into an involuntary annexation, which the City would bring.

In February 2001, the Board ordered the formation of a special local committee to consider the competing Hiawatha and Cedar Rapids petitions for involuntary annexation of the Pruss property. *See* Iowa Code § 368.14A. Later that same year, the Cedar Rapids/Hiawatha Annexation Special Local Committee voted to approve the Hiawatha petition and dismiss the Cedar Rapids petition. The Committee found Hiawatha had the ability to provide appropriate levels of new municipal services and benefits to the Pruss property. An election was held, and the annexation was approved by a majority of voters. *See id.* § 368.19.

Pruss filed a petition for judicial review of the Committee's decision to annex his property to Hiawatha. Cedar Rapids

joined the petition, and Hiawatha intervened on behalf of the Committee. The district court affirmed.

Pruss and Cedar Rapids appealed. Their arguments, which are for the most part the same as those raised in the district court, boil down to four claims: namely, they contend the Committee (1) failed to grant the Cedar Rapids annexation request a presumption of validity; (2) wrongly concluded Hiawatha could provide substantial municipal services and benefits not previously enjoyed by the annexed territory; (3) did not give adequate notice of a pre-hearing conference; and (4) improperly ordered the election before filing its written decision.[1]

Additional facts will be set forth below as needed.

## II. Standard and Scope of Review

 Iowa's city development statute specifically limits judicial review of a committee decision. It states:

The judicial review provisions of this section and chapter 17A shall be the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of that agency action. The court's review on appeal of a decision is limited to questions relating to jurisdiction, regularity of proceedings, and whether the decision appealed from is arbitrary, unreasonable, or without substantial supporting evidence. The court may reverse and remand a decision of

the board or a committee, with appropriate directions.

Iowa Code § 368.22. Iowa Code chapter 17A, the Iowa Administrative Procedure Act, generally limits review, with certain enumerated exceptions we need not discuss here. See id. §§ 17A.19–.20; Citizens of Rising Sun v. Rising Sun City Dev. Comm., 528 N.W.2d 597, 599 (Iowa 1995) (explaining interplay between specific limitations of the review provisions of the city development statute and the general limitations of a previous version of the Iowa Administrative Procedure Act). See generally Mycogen Seeds v. Sands, 686 N.W.2d 457, 463–465 (Iowa 2004) (explaining general provisions of current Iowa Administrative Procedure Act). On appeal, we decide whether the district court correctly applied the law. See Mycogen, 686 N.W.2d at 464; Dickinson County v. City Dev. Comm., 521 N.W.2d 466, 468 (Iowa 1994). If our conclusions are the same as those the district court reached, we affirm; if not, reversal may be required. See Mycogen, 686 N.W.2d at 464; Dickinson County, 521 N.W.2d at 468.

 The law of annexation is purely statutory. See Citizens of Rising Sun, 528 N.W.2d at 599. The legislature prescribes the conditions of, and procedures for, annexation. See id. Nonetheless, "a failure to literally comply with every word of our annexation statutes is not fatal." City of Des Moines v. City Dev. Bd., 473 N.W.2d 197, 200 (Iowa 1991). "Substantial compliance . . . is sufficient, and legislation estab-

---

1. In the district court, Cedar Rapids also argued the Committee was not permitted to allow a pre-hearing amendment to delete lands from its petition which had, in the interim, been voluntarily annexed to other cities, including lands which were the subject of *Hiawatha I* and *Hiawatha II*. Cedar Rapids claimed the Committee violated Iowa Code § 368.18 (2001) and the Iowa Administrative Code when it amended the petition before a

public hearing was held. The district court disagreed and ruled there was substantial compliance with chapter 368; in the alternative, the court also found the petitioners did not suffer any prejudice. Although the Attorney General, on behalf of the Board and Committee, briefs this issue again, it does not appear that the petitioners have reasserted this argument on appeal. We therefore do not address it.

lishing the method by which municipal corporate boundaries may be extended is to be liberally construed in favor of the public." *Id.*

## III. The Merits

### A. Conversion and Presumption of Validity

■ The most contentious and complicated issue in this case is a thorny matter of statutory interpretation: namely, is Cedar Rapids' request to annex the Pruss property entitled to a presumption of validity because it was "converted" from Pruss's denied application for voluntary annexation? This question involves the juxtaposition of two sections of Iowa's city development statute, which taken together involve three discrete legal principles. Iowa Code section 368.6 establishes (1) a presumption of validity for applications for voluntary annexation; section 368.7 provides (2) a denied voluntary annexation request shall be "converted" into an involuntary annexation petition, but (3) this transformation shall not prejudice the status of the applicant. Pruss argues a converted petition is still entitled to a presumption of validity, because if the presumption of validity did not survive the conversion, so to speak, he would be prejudiced. The Committee, in line with the district court, takes a narrower view.

Because of the complexity of the statute, we think it is best to work through the analysis to be applied in this case step-by-step, and in stride with the actions of the Board and the Committee. We begin with the Board's initial decision in 1997 to deny the Pruss application for voluntary annexation, while it tabled the contemporaneously filed Hiawatha petition for involuntary annexation which contained common territory. Iowa's city development statute provides:

If one or more applications for a voluntary annexation and one or more petitions for an involuntary annexation or incorporation for a common territory are submitted to the board within thirty days of the date the first application or petition was submitted to the board, the board shall approve the application for voluntary annexation, *if the application meets the applicable requirements of this chapter,* unless the board determines by a preponderance of the evidence that the application was filed in bad faith, or that the application as filed is contrary to the best interests of the citizens of the urbanized area, or that the applicant cannot within a reasonable time meet its obligation to provide services to the territory to be annexed sufficient to meet the needs of the territory.

Iowa Code § 368.7(4) (emphasis added). Elsewhere the statute forbids the creation of an island of unincorporated territory. *See id.* § 368.7(3); *see also id.* § 368.1(10). In this respect, the Board properly denied the Pruss application for voluntary annexation, because it would have created an island of unincorporated territory, and thus did not meet the applicable requirements of the chapter.

After the Pruss application was denied, the Board notified Cedar Rapids that it might resurrect the denied Pruss application by converting it into an involuntary petition. The relevant portion of the statute states:

If an application for voluntary annexation is not approved pursuant to this section, the board shall cause the conversion of the application to a petition pursuant to section 368.13 and shall proceed under section 368.14A. The conversion of an application to a petition shall not prejudice the status of the applicant.

*Id.* § 368.7(4); *see id.* § 368.13 ("The board may request a city to submit a plan for city development or may formulate its own plan for city development. A plan submitted at the board's initiation must include the same information as a petition and be filed and acted upon in the same manner as a petition."). Cedar Rapids passed a resolution authorizing the filing of a request to convert Pruss's denied application for voluntary annexation into an involuntary annexation, and it was so converted. The Board then formed a special local committee to weigh the two competing involuntary annexation requests. *See id.* § 368.14A (providing for the formation of a special local committee to adjudicate competing involuntary petitions).

At issue before the special local committee was whether the Cedar Rapids petition was entitled to a presumption of validity. With little explanation, the Committee ruled it was not. The district court affirmed. For the reasons that follow, we agree.

■ Iowa's city development statute manifests a preference for voluntary annexation of land when both voluntary and involuntary annexations compete. *Hiawatha I,* 609 N.W.2d at 501 (citation omitted). This preference is demonstrated in at least two respects in the statute. First, the legislature did not require applications for voluntary annexation to undergo many of the costly procedures which are required of petitions for involuntary annexation, such as public hearings and elections.[2] *Gorman v. City Dev. Bd.,* 565 N.W.2d 607, 609 (Iowa 1997); *City of Waukee v. City Dev. Bd.,* 514 N.W.2d 83, 87–88 (Iowa 1994) (*Waukee I*); *City of Des Moines,* 473 N.W.2d at 200; *see, e.g.,* Iowa

Code § 368.11 (listing contents of petitions). Second, applications for voluntary annexation are explicitly afforded a presumption of validity. Iowa Code § 368.6; *see Hiawatha I,* 609 N.W.2d at 501. This presumption results from a stated legislative desire to "give due consideration to the wishes of the residents of territory to be annexed, and to the interests of the residents of all territories affected by an annexation." Iowa Code § 368.6. The legislature expressly assumed "a voluntary annexation of territory more closely reflects the wishes of the residents of territory to be annexed. . . ." *Id.*

The presumption of validity, however, is not a nebulous concept simply inscribed in general terms in the Code. The presumption is specifically borne out in section 368.7, which outlines the procedures for the voluntary annexation of territory. The Board is required to approve such an annexation unless a preponderance of the evidence shows the application was filed in bad faith, the annexation is contrary to the best interests of the urbanized area, or services cannot be sufficiently provided in a reasonable period of time. *Id.* § 368.7. Likewise, an application for voluntary annexation must be denied if it runs afoul of other aspects of the statute, such as the prohibition against the creation of islands of unincorporated territory. *See id.* (application must meet "applicable requirements of this chapter"). If proved, these four conditions—three specific, one general— defeat the presumption of validity for a voluntary annexation. Otherwise the application must be approved. When read in context with legislative intent as expressly stated in Iowa Code section 368.6, the statute plainly strikes a balance between

2. Although not applicable to the present case, the legislature recently lessened the extent of this preference, requiring cities to hold public hearings and provide notice before approving certain voluntary annexations. *See* 2002 Iowa Acts ch. 1132, §§ 6, 11 (codified at Iowa Code § 368.7(1) (2003)).

the wishes of the residents of the territory under consideration for annexation against other important public policy concerns. Pruss's application for voluntary annexation of his land to Cedar Rapids was denied because it ran afoul of public policy insofar as it would create an island of unincorporated territory. The legislative aversion to islands simply outweighs the legislative desire to comply with the wishes of the residents of the territory in question.

Pruss now argues this conversion should not prejudice his application in any respect and his application for annexation, although "converted," should still therefore be afforded a presumption of validity. At the outset, we note it is difficult to understand what form such a presumption would take. Indeed, the only statutorily prescribed mechanism for carrying out such a presumption is embedded in the four defeasibility conditions set forth above—three specific, one general—which, of course, only apply to voluntary applications. The Cedar Rapids petition for involuntary annexation, albeit converted from Pruss's application for voluntary annexation, is not itself a voluntary application.

Although Pruss often complains it is nonsensical to refer to the converted annexation request as an involuntary petition because, in truth, he is the only landowner and he consents to annexation to Cedar Rapids, his argument mistakenly equates the legislature's use of the "voluntary" and "involuntary" nomenclature as an immutable characterization of the consent or lack thereof of the residents of the land sought

to be annexed. In truth, the terms are merely shorthand appellations used by the legislature to describe the *form* of the action, and do not necessarily reflect the wishes of all the residents of the land in question. While it is true these appellations generally correspond to the preferences of the residents, the correlation is not perfect. The distinction is readily apparent upon a close inspection of the statute: in some voluntary annexations, for example, up to twenty percent of the landowners might not consent. *See id.* § 368.7 (providing for so-called 80/20 annexation wherein voluntary annexation may be permissible if no more than twenty percent of landowners object). We implicitly recognized this important distinction in *Hiawatha I.* 609 N.W.2d at 500 (carefully using the terms "consenting" and "nonconsenting").[3]

If accepted, Pruss's argument that converted involuntary petitions must be afforded a presumption of validity would destroy the statutory framework at issue, which simply puts failed voluntary applications on a level playing field with involuntary applications, for the policy reasons announced above. In many respects, then, Pruss's argument is the converse of an argument leveled in our first case decided under the new city development statute, *City of Des Moines.* In that case, we rejected an argument which would have eviscerated the distinction between voluntary and involuntary annexations and resulted in the imposition of all the technical elements of involuntary annexation procedure, including a public hearing and an

---

**3.** It is also unclear whether Pruss actually *resides* on the property in question, or simply owns it. It is unsettled whether the presumption of validity would apply to non-resident owners. *See* Iowa Code § 368.6 (in discussing presumption of validity, noting legislative desire to give "due consideration to the wishes of the *residents* of territory to be annexed, and to the interests of the *residents* of all territories affected by an annexation") (emphasis added). The parties do not address this possible issue on appeal, however, and we do not consider it.

election, in certain voluntary annexations. *See City of Des Moines,* 473 N.W.2d at 200. We rejected such an interpretation because it would have "render[ed] meaningless the distinction between voluntary and involuntary annexations" and "thwart[ed] the legislative scheme of distinguishing between [the two]." *Id.* at 201. The same basic principle applies here; we will not adopt an interpretation of the statute which eviscerates the distinction between voluntary and involuntary annexations.

■ The better interpretation of the statutory language that "[t]he conversion of [a denied] application to a petition shall not prejudice the status of the applicant" is that conversion should not prejudice the applicant's status as a valid participant in the process. That is, the mere fact of the prior denial should not be held against the applicant. In the present case, Pruss was not prejudiced; although the Cedar Rapids involuntary petition was filed well after the competing Hiawatha petition (and was thus assigned a new file number, *etc.*), it was nonetheless considered as if filed contemporaneously with it. *See* Iowa Code § 368.11 ("Within ninety days of receipt of a petition, the board shall initiate appropriate proceedings or dismiss the petition. The board may combine for consideration petitions or plans which concern the same territory. . . . The combined petitions may

be submitted for consideration by a special local committee pursuant to section 368.14A."). As the trial judge wrote:

> [T]he requirement that the status of the applicant not be prejudiced can only mean that a converted petition will be considered to have been timely filed and procedurally correct, and that the Committee, in later considering the converted petition with competing petitions, will not hold the fact that the application originally was not approved against the applicant. . . . Nothing in the statute or the administrative code grants such a preference to a converted petition. Rather, Pruss and Cedar Rapids were only entitled to have their Petition considered timely filed and procedurally correct, and to be given fair and equal consideration in spite of the fact that their annexation request earlier had been disapproved.

We agree with this analysis in principle, although we reserve the right to determine its precise contours in a case where it is a determinative issue. In this case, we hold the Cedar Rapids petition for involuntary annexation was not entitled to a presumption of validity and therefore Pruss was not "prejudiced" within the meaning of the conversion section of Iowa's city development statute when the Board made its decision without applying such a presumption.[4]

---

4. It does not matter that the original reason Pruss's application for voluntary annexation was denied—the creation of an island of unincorporated territory—had disappeared by the time of the hearing on the converted request on account of other subsequent annexations. (Indeed, had circumstances not so changed, Iowa Code § 368.17(7) would have required the Committee to deny the converted request for annexation.) While at first blush one might presume that the reason which defeated the presumption of validity would still be present after the application was converted to a petition—thereby justifying the continued

placement of the converted request "on the same footing" as petitions for involuntary annexation—on further reflection it is apparent that where the process for annexation is long and drawn out, the circumstances that cause denial of the application may change. For example, in some cases, in the lapse of time between the denial of the application for voluntary annexation and the hearing on the resulting converted petition, the ability of the city to which annexation is proposed to provide services to the annexed area might improve. In other cases the best interests of the area might change. It is clear, then, that

## B. Services

■ Pruss and Cedar Rapids claim there was not substantial evidence in the record from which the Committee could conclude that Hiawatha could provide substantial municipal services and benefits not previously enjoyed by the annexed territory. *See* Iowa Code § 368.17(4); *Dickinson County*, 521 N.W.2d at 468–471; *Deer Creek Homeowners Ass'n v. City Dev. Bd.*, 556 N.W.2d 155, 159 (Iowa Ct.App.1996). Much of the argument centers around whether Hiawatha could provide sanitary sewer service to the area. Pruss and Cedar Rapids point to facts which, they maintain, show why the Committee should have chosen Cedar Rapids and not Hiawatha.

■ Critical to our decision on this issue is our standard of review, enunciated above. Pruss and Cedar Rapids' primary complaint is that the Committee's decision lacked substantial supporting evidence. *See* Iowa Code § 368.22; *City of Des Moines*, 473 N.W.2d at 202. There is substantial evidence "[i]f a reasonable person would find the evidence adequate to reach [such] a decision...." *City of Des Moines*, 473 N.W.2d at 199.

After an exhaustive review of the record, we conclude a reasonable person would find the evidence adequate to reach the conclusion that Hiawatha could provide substantial municipal services and benefits not previously enjoyed by the annexed territory. Although the Committee's discussion of the issue is limited, Hiawatha contended it would provide the area with a significant bonding capacity, police and fire protection, public works, a library, parks and playgrounds, and sanitary sewer[5] and water services. The Committee apparently accepted Hiawatha's contentions. There is substantial evidence in the record to support the Committee's decision, and for this reason it must be upheld. *See* Iowa Code § 368.17(4).

■ We recognize there is also substantial evidence in the record to show Cedar Rapids could provide the Pruss property with substantial new municipal services and benefits. Indeed, the Committee appeared to recognize the same, when, after it surveyed Cedar Rapids' ability to serve the area, it noted that "it was not prohibited from approving either petition." Review of the relevant hearing transcripts clearly indicates in the final analysis the Committee chose Hiawatha because it determined approval of the Hiawatha petition was in the public interest. The Committee decided that unless it approved the Hiawatha petition, Hiawatha would become landlocked; the Committee determined approval of the Cedar Rapids petition would deprive Hiawatha of any future growth and deny landowners north and west of the Pruss property "a choice between cities in future annexations."

■ Although Pruss does not appear to specifically challenge this aspect of the Committee's decision, we find nothing arbitrary or unreasonable with such an idea. "[L]egislation establishing the meth-

---

Iowa's city development statute gives applicants for voluntary annexation "one shot" at a presumption of validity, at a given point in time. It is to this framework that we are bound, which encourages the speedy resolution of problem-free voluntary annexations. *Accord City of Des Moines*, 473 N.W.2d at 200–01. As Justice Holmes once remarked for the court, "[t]he Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed." *Johnson v. United States*, 163 F. 30, 32 (1st Cir.1908).

5. Hiawatha's sewage is treated by the Cedar Rapids Wastewater Treatment Plant pursuant to a longstanding agreement. *Cf. Hiawatha II*, 609 N.W.2d at 536 (agreement for library services).

ods by which municipal corporate boundaries may be extended is to be liberally construed in favor of the public." *City of Des Moines*, 473 N.W.2d at 200. The Board is charged with "overseeing long-range planning and orderly development of cities." *City of Waukee v. City Dev. Bd.*, 590 N.W.2d 712, 720 (Iowa 1999) (*Waukee II*). So long as approval is not otherwise barred, "the committee shall approve any proposal which it finds to be in the public interest." Iowa Code 368.16. In this case, approval to Hiawatha was not barred and the Committee expressly determined the public interest would be better served if the Pruss property were annexed to Hiawatha and not Cedar Rapids. *Cf. Waukee II*, 590 N.W.2d at 720–21. The district court properly affirmed the Committee's decision.

## C. Notice & Election

■ The petitioners' two remaining arguments may be readily disposed of on error preservation grounds. First, Pruss and Cedar Rapids claim the Committee did not provide proper notice of a pre-hearing conference held on May 29, 2001. *See* Iowa Code § 368.15; Iowa Admin. Code r. 263—3.11 (1991) (requiring notice be given to all parties). Hiawatha requested the conference because it wanted to resolve two issues (1) whether the converted annexation petition was entitled to a presumption of validity and (2) whether Hiawatha was permitted to amend its petition to delete those parcels from its proposal which had, in the meantime, been annexed to other municipalities. The district court ruled the petitioners did not preserve error. In the alternative, the court ruled the petitioners could not show prejudice because all parties had actual notice and were present.

■ Although the petitioners attended the pre-hearing conference and even filed papers in advance of it, they did not claim the Committee failed to provide proper notice. It is well-settled that judicial review of administrative action is limited to questions considered by the agency. *Anderson v. City Dev. Bd.*, 631 N.W.2d 671, 673 (Iowa 2001); *McCracken v. Iowa Dep't of Human Servs.*, 595 N.W.2d 779, 785 (Iowa 1999); *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688 (Iowa 1994). We agree with the district court that the petitioners failed to preserve error, and deem this issue waived. *See City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 536 (Iowa 1996).

■ Pruss and Cedar Rapids also claim the Board improperly ordered the election on the Hiawatha proposal. The relevant statute provides as follows:

If a petition ... is approved, the board shall set a date not less than thirty days nor more than ninety days after approval for a special election on the proposal.

Iowa Code § 368.19. Pruss and Cedar Rapids argue the Board acted illegally because it scheduled the election before issuing its final written opinion. Once again, however, the petitioners failed to raise this argument at the agency level. Petitioners thus failed to preserve error on this issue, as well. *See Anderson*, 631 N.W.2d at 673.

## IV. Conclusion

We find the Committee acted legally and its decision was supported by substantial evidence. Once converted from Pruss's application for voluntary annexation, the Cedar Rapids petition to involuntarily annex Pruss's land was not entitled to a presumption of validity. In addition, the decision of the Committee to approve annexation to Hiawatha was supported by substantial evidence. Lastly, Pruss and Cedar Rapids did not preserve error on their challenges to notice of a pre-hearing conference and the holding of an election.

We therefore affirm the district court in all respects. All remaining arguments not specifically addressed in this opinion are rejected as lacking merit or moot given our disposition of the principal issues in this case.

**AFFIRMED.**

All justices concur except LARSON, J., who takes no part.