**IN THE COURT OF APPEALS OF IOWA**

No. 19-1362
Filed May 12, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BENJAMIN LLOYD FREKING,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Boone County, Stephen A. Owen, District Associate Judge.

        Benjamin Freking appeals the denial of his motion to suppress and a portion of the sentence imposed. **CONVICTION AFFIRMED; SENTENCED VACATED IN PART AND REMANDED.**

        Matthew G. Sease and Kylie E. Crawford of Sease & Wadding, Des Moines, and John M. Sandy of Sandy Law Firm, P.C., Spirit Lake, for appellant.

        Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

        Considered by Bower, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Benjamin Freking appeals his conviction, following a bench trial on the minutes of evidence, of possession of a controlled substance, marijuana. He challenges the district court's denial of his motion to suppress evidence obtained as a result of an allegedly unconstitutional traffic stop. He also challenges a component of his sentence, the imposition of a drug abuse resistance education (DARE) surcharge.

## I.    Background Facts and Proceedings

Upon our de novo review of the record, we make the following factual findings. At roughly 11:45 p.m. on the evening of November 12, 2018, Deputy Preston King of the Boone County Sheriff's Department was on routine patrol in a rural area of the county when he observed a vehicle stopped on the gravel road, with its brake lights illuminated. The area was near a railroad and its access roads, and King testified the railroad company reported trespassing "fairly often," and King had previously responded to the area on reports of underage drinking and drug activity. He believed the vehicle to be "parked halfway on the road and halfway on to th[e] railroad property." King testified he was also concerned for the welfare of the vehicle's occupants. King turned around and approached the vehicle in his police cruiser. When King pulled up behind the subject vehicle, it remained stationary, parked, and facing forward on the left-hand portion of the road—in other words, the vehicle was facing north in the southbound lane. King testified the

vehicle was parked in violation of Iowa Code section 321.354(1)(b) (2018).[1] After activating his search light and exiting his cruiser, the vehicle began to pull away on the left side of the road, which King testified was an additional violation of Iowa Code section 321.297.[2] King activated his emergency lights and initiated a traffic stop.

A review of the dash-cam footage largely confirms King's testimony, but details the subject vehicle was parked partially on and partially off of the road, facing somewhat northeast with its nose sticking out into the traveled portion of the southbound lane. After King exited his cruiser, the car slowly veered out further into the traveled portion of the southbound lane, which prompted King to activate his emergency lights. The vehicle then came to a brief stop in the southbound

---

[1] Section 321.354(1)(b) provides:

> (1) A person shall not stop, park, or leave standing an attended or unattended vehicle upon any highway outside of a business district, rural residence district, or residence district as follows:
>
> . . . .
>
> (b) Upon the main traveled part of a highway other than a paved highway when it is practical to stop, park, or leave the vehicle off that part of the highway. However, a clear and unobstructed width of that part of the highway opposite the standing vehicle shall be left to allow for the free passage of other vehicles.

[2] Section 321.297(1) provides:

> (1) A vehicle shall be driven upon the right half of the roadway upon all roadways of sufficient width, except as follows:
>
> (a) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement.
>
> (b) When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided, any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute an immediate hazard.
>
> (c) Upon a roadway divided into three marked lanes for traffic under the rules applicable thereon.
>
> (d) Upon a roadway restricted to one-way traffic.

lane, proceeded slowly over the southbound lane to the north, then veered into the northbound lane, and then stopped.

King approached the vehicle, which was driven by Freking and contained two other occupants. When he made contact, King smelled marijuana. As a result of the traffic stop, Freking was formally charged by trial information with possession of a controlled substance.

Freking filed a motion to suppress the evidence obtained as a result of the traffic stop, arguing, "The evidence was obtained through an illegal stop of [his] vehicle." The State resisted, asserting Deputy King had probable cause or reasonable suspicion of violations of Iowa Code sections 321.354(1)(b) and 321.297(1) or, alternatively, the encounter was authorized by the community caretaker exception.[3]

In his post-hearing brief, Freking argued he did not engage in either alleged traffic violation, so King did not have a sufficient basis to initiate a traffic stop. He also argued the community caretaker exception was inapplicable. The court highlighted King's detection of the vehicle on a dark rural road late at night when traffic is not common and where trespassing, underage drinking, and drug use occur often. The court, finding King's testimony credible and reliable, concluded King had reasonable suspicion and probable cause to institute a traffic stop and denied Freking's motion to suppress. Following a bench trial on the minutes of evidence, the court found Freking guilty as charged. As part of Freking's sentence

---

[3] On appeal, it appears the State has abandoned the community caretaker exception as a basis for the encounter.

the court suspended Freking's term of incarceration but ordered him to pay a $10 DARE surcharge. Freking appeals.

## II. Standard of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019) (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)). "[W]e independently evaluate the totality of the circumstances as shown by the entire record." *State v. Smith*, 919 N.W.2d 1, 4 (Iowa 2018) (alteration in original) (quoting *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016)). "Each case must be evaluated in light of its unique circumstances." *Fogg*, 936 N.W.2d at 667 (quoting *Coffman*, 914 N.W.2d at 244). We give deference to the district court's findings of fact, but we are not bound by them. *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017). "We review challenges to the legality of a sentence for legal errors." *State v. Louisell*, 865 N.W.2d 590, 596 (Iowa 2015).

## III. Analysis

### A. Motion to Suppress

"The Fourth Amendment [to] the United States Constitution," as applied to the states by the Fourteenth Amendment, "and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures." *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001); *accord State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Evidence obtained following a violation of these constitutional protections is generally inadmissible at trial. *See Wong Sun v.*

*United States*, 371 U.S. 471, 484–85 (1963); *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961); *Naujoks*, 637 N.W.2d at 111.

It is true that stopping an automobile and detaining its occupants unquestionably amounts to a seizure within the meaning of the state and federal constitutions. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Coleman*, 890 N.W.2d 284, 288 (Iowa 2017); *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013). But, all that is constitutionally required for a traffic stop to be permissible is that it be reasonable. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8. "Generally, a traffic stop is reasonable when the police have probable cause or reasonable suspicion to believe that the motorist violated a traffic law." *State v. Brown*, 930 N.W.2d 840, 845 (Iowa 2019). The burden is on the State to establish probable cause by a preponderance of the evidence. *Id.* at 855. If a traffic infraction occurs, however minor, and the officer witnessed it, the State has met its burden. *Id.*; *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004). "The existence of probable cause for a traffic stop is evaluated 'from the standpoint of an objectively reasonable officer.'" *Brown*, 930 N.W.2d at 855 (quoting *Tyler*, 830 N.W.2d at 293–94). And, importantly, "[p]robable cause may exist even if the officer's perception of the traffic violation was inaccurate." *Tyler*, 830 N.W.2d at 293. "Probable cause exists where the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *State v. Pals*, 805 N.W.2d 767, 775 (Iowa 2011) (alterations in original) (internal quotation marks omitted) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). In determining whether the

officer observed a violation of our traffic laws, we will "give considerable deference to the trial court's findings regarding the credibility of the witnesses," but we will not be "bound by them." *See Tague*, 676 N.W.2d at 201.

Freking's argument as to the traffic violations on appeal boils down to one central concept: that the State failed to prove, as a matter of law, that the situation and movements of his vehicle were in violation of sections 321.354(1)(b) and 321.297(1). Even if we were to assume such a legal showing was required, we disagree, at least as to section 321.297(1).[4] As noted above, the vehicle was initially parked partially on and partially off the road, facing somewhat northeast. Upon King's approach, the vehicle pulled further onto the road, still facing northeast, briefly stopped, turned north and briefly traveled north in the southbound lane, and then veered over on the right side of the northbound lane. Section 321.297(1) mandates "vehicle[s] shall be driven upon the right half of the roadway upon all roadways, of sufficient width," except in certain circumstances. The dash-cam footage shows the width of the road was sufficient to allow travel on both halves of the road. And Freking was not overtaking another vehicle, the road was not obstructed, and the roadway did not have three marked lanes or a one-way-traffic restriction, so none of the exceptions apply. *See* Iowa Code § 321.297(1)(a)–(d). While brief, Freking's vehicle was driven northbound on the left side of the road. Freking argues the statute "must be interpreted in light of (1) the fact that turning left onto a road inherently involves driving upon the left half

---

[4] As to section 321.354(1)(b), on cross-examination, King was unsure if the road was within a "rural residential district," and therefore did not fall within the statute's applicability.

of the roadway and (2) the cautious attitude that must be exercised when turning on a gravel road." We agree that section 321.297 "does not mean a driver may not turn across the left side of the roadway in order to enter [or exit] a driveway." *France v. Benter*, 128 N.W.2d 268, 542 (Iowa 1964). But that is not what Freking did here. He pulled out from being partially on and partially off the road into the left-hand lane and traversed briefly down that lane before pulling into the right-hand lane. And if the legislature wished to provide an additional exception for situations where caution is required on gravel roads, it could have done so, but we will not add words to the statute. *See, e.g.*, *Iselin v. United States*, 270 U.S. 245, 251 (1926) ("To supply omissions transcends the judicial function."); *City of Asbury v. Iowa City Dev. Bd.*, 723 N.W.2d 188, 197 (Iowa 2006) ("We may not, under the guise of judicial construction, add modifying words to a statute or change its terms absent 'inadvertent clerical errors or omissions which frustrate obvious legislative intent.'" (citation omitted)). And we are unable to agree with Freking that the gravel nature of the road amounted to an obstruction within the meaning of section 321.297(1)(b). So we conclude King had probable cause to initiate the traffic stop.

In addition, based on his familiarity with the area, prior calls for service, knowledge of the private nature of the adjacent access road, and the vehicle's location, he was concerned the vehicle may have been trespassing[5] on railroad property. Assuming without deciding King was acting on a mere hunch as to drug

---

[5] In challenging the basis of the stop as to trespassing, Freking makes several arguments that were not made before the district court and refers to secondary sources that were not put before the court on the issue of whether the railroad access road was private property. The arguments are not preserved for appellate review, and the record before us unequivocally shows the access road was private property.

activity or underage drinking, when he arrived, Freking's vehicle was still partially parked on private property. These circumstances provided reasonable suspicion to initiate a brief investigatory stop for King to "resolve the ambiguity as to whether criminal activity was afoot." *Tyler*, 830 N.W.2d at 298 (citation omitted).

We conclude the traffic stop was supported by probable cause or, at least, reasonable suspicion. We affirm the denial of Freking's motion to suppress.

### B.    Sentencing

Freking argues the imposition of the DARE surcharge was illegal. Because the district court suspended Freking's sentence, the State agrees, and so do we. *See* Iowa Code § 911.2(2) ("The surcharge shall not be assessed for any offense for which the court . . . suspends the sentence.").[6] So we vacate that component of the sentence and remand the matter to the district court for entry of a revised sentencing order. *See State v. McLachlan*, 880 N.W.2d 513, 516 n.5 (Iowa Ct. App. 2016) ("A revised sentencing order provides a final, complete memorialization of the sentence imposed and that must be enforced.").

## IV.    Conclusion

We affirm the denial of Freking's motion to suppress and conviction. We vacate the imposition of the DARE surcharge as part of Freking's sentence and remand the matter to the district court to enter a corrected sentencing order.

**CONVICTION AFFIRMED; SENTENCED VACATED IN PART AND REMANDED.**

---

[6] Section 911.2 was in effect at the time Freking's sentence was imposed but has since been repealed.