# IN THE COURT OF APPEALS OF IOWA

No. 19-0048
Filed May 13, 2020

**DAVID MICHAEL JOHNSTON,**
    Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF TRANSPORTATION,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

The Iowa Department of Transportation revoked driving privileges pursuant to a habitual-offender statute. An appeal follows from the district court's denial of a petition for judicial review. **AFFIRMED.**

Christopher Stewart of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Michelle E. Rabe, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

David Michael Johnston appeals from a district court's denial of his petition for judicial review, which he filed after the Iowa Department of Transportation (IDOT) revoked his driving privileges due to the commission of three offenses enumerated in Iowa's habitual-offender statute. We reject one of his arguments as unpreserved and the remainder as contrary to Iowa precedent. We therefore affirm the district court's denial of his petition.

**Background and Proceedings**

Johnston was arrested for operating while intoxicated (OWI) on Dec. 23, 2011, and was convicted of that offense on March 8, 2012. He was again arrested on November 12, 2017, for OWI and eluding. He was convicted of the second OWI on April 19, 2018, and was granted a deferred judgment on the eluding charge. On April 23, 2018, IDOT issued a notice that it was barring Johnston's privilege to operate and drive motor vehicles effective May 28, 2018, until April 23, 2023, pursuant to Iowa Code section 321.555(1) (2018).

Johnston appealed the revocation, and a telephonic hearing was held on July 12, 2018, before an administrative law judge (ALJ). The ALJ sustained IDOT's revocation determination on July 19, 2018. Johnston appealed the ALJ's findings to an IDOT reviewing officer, who also affirmed. Johnston then filed a petition for judicial review. The district court heard oral arguments and dismissed the petition. Johnston timely appealed, arguing his deferred judgment should not count as a conviction for purposes of a habitual-offender license revocation, the date of a conviction should be used instead of the date of an offense for determining

habitual-offender status, and with respect to the eluding charge, IDOT must prove an additional element for purposes of a habitual-offender determination.

**Standard of Review and Error Preservation**

Johnston frames his three arguments on appeal as derivative of a broader claim that substantial evidence is lacking to support the agency's decision. We disagree with this framing and find that the arguments raise pure questions of statutory interpretation. *See State v. Stephenson*, 608 N.W.2d 778, 783–84 (Iowa 2000) ("Stephenson's claim of insufficient evidence is essentially a question of statutory construction.").

We reach this conclusion because none of the facts in this case are in dispute; the disposition of the issues turns solely on the interpretation of questions of law. *Compare Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844–45 (Iowa 2011) (reviewing the agency's factual findings for substantial evidence), *with Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518–19 (Iowa 2012) (reviewing an agency's interpretation of statutory text for correction of legal error); *see also Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012) (distinguishing between review of factual findings, review of application of law to facts, and review of interpretation of law). Because Johnston's disagreements with the legal interpretations made by the tribunals below are best characterized as matters of statutory interpretation, we review for correction of errors at law. *McCormick v. Meyer*, 582 N.W.2d 141, 144 (Iowa 1998). We review for correction of "erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency." Iowa Code § 17A.19(10)(c).

**Error Preservation**

Based on our conclusion regarding the applicable standard of review, we must consider each of Johnston's arguments independently for purposes of error preservation analysis. "We are limited in our review of the district court's [decision] to only those issues initially addressed by the agency." *Anderson v. City Dev. Bd.*, 631 N.W.2d 671, 673 (Iowa 2001); *see also Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Human Serv.*, 613 N.W.2d 674, 676 (Iowa 2000). Under this rule, "[t]he claim or issue raised does not actually need to be used as the basis for the decision to be preserved, but the record must at least reveal the court was aware of the claim or issue and litigated it." *Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002). Under these standards, we conclude that one of Johnston's arguments is unpreserved.

Johnston argues IDOT failed to show that the law enforcement vehicle he eluded was pursuing him. He does not dispute that he was eluding, but he contends IDOT failed to prove he was being pursued. Johnston provides no authority for the proposition that section 321.555(1)(g) creates such additional requirement, and we have failed to identify any case supporting his proposition. Instead, his appellate brief analyzes section 321.555(1)(g) and argues "[t]he legislature intended for habitual offender eluding to require an additional step," calling the statute "unambiguous" on that point.

There is no evidence in the record showing that IDOT was aware of this claim. It was neither raised nor decided in the administrative tribunal. In his letter of appeal dated August 3, 2017, Johnston did not raise the argument. Moreover, Johnston impliedly concedes the absence of any discussion of the issue at the

agency level by arguing, "more factual development is required of the IDOT." Johnston's argument highlights the fact that the agency was unaware of Johnston's novel interpretation of 321.555(1)(g). The argument was first raised to the district court, upon its consideration of Johnston's petition for review, and therefore the agency had no opportunity to address or rebut the argument. The district court was correct to reject the argument as unpreserved, and we do the same. Under our long-standing error preservation rules, the argument is unpreserved.[1] *Meier*, 641 N.W.2d at 537, 540.

**Discussion**

We proceed to consider Johnston's two properly preserved arguments. First, he argues that the deferred judgment he received for the eluding charge should not count for purposes of calculating whether he is a habitual offender under section 321.555(1). Second, he maintains for purposes of a habitual-offender determination, the dates of his convictions should be used instead of the dates of the offenses.

### a. Deferred Judgment

Johnston was charged under section 321.279 with eluding a marked official law enforcement vehicle, and he received a deferred judgment for the charge. He argues his deferred judgment should not count for purposes of calculating whether

---

[1] Even if this argument were properly preserved, we would reject it due to a lack of supporting authority and our perception that Johnston's reading of the statute would result in the State having to prove a new element under section 321.555(1)(g) that is duplicative of an existing element in that same provision.

he is a habitual offender under section 321.555(1). In light of *Schilling v. Iowa Department of Transportation*, 646 N.W.2d 69 (Iowa 2002), we disagree.

In *Schilling*, the defendant pled guilty to eluding a law enforcement vehicle in violation of section 321.279. 646 N.W.2d at 70. After receiving notice of a one-year revocation of his driver's license under section 321.209, the defendant petitioned for judicial review, arguing that a deferred judgment did not constitute a "final" conviction for the purposes of section 321.209. *Id.* at 72. The *Schilling* court considered the definition of "deferred judgment" and concluded that a deferred judgment for an eluding conviction could be considered a conviction for purposes of section 321.209, which requires mandatory revocation in light of certain offenses. *Id.* at 71, 73.

The *Schilling* court did not consider Iowa's habitual-offender statute. However, we find that the rationale of *Schilling* applies equally to section 321.555(1), and we hold that Johnston's deferred judgment is a final conviction for purposes of that section.[2]

The *Schilling* court adopted a test to determine whether a conviction is final for purposes of a statute designed for protection of the public. *Id.* at 73. The court said,

> The first question is whether the license revocation is aimed at the protection of the public or as a punishment measure. . . . If the revocation statute is protective in nature, the establishment of the following elements will be sufficient to show that a conviction exists: (1) A judge or jury has found the defendant guilty, or the defendant has entered a plea of guilty; (2) the court has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed; (3) a judgment of guilty may be entered if the person

---

[2] Because Johnston's license was revoked under section 321.555(1), we limit our holding to that subsection.

violates the terms of probation or fails to comply with the requirements of the court's order; and (4) the conviction has become final. A conviction is final if the defendant has exhausted or waived any postorder challenge.

*Id.* (citation omitted).

First, we consider whether the revocation of a habitual offender's license under section 321.555(1) is protective of the public. The *Schilling* court determined that mandatory revocation of licenses for offenses enumerated in section 321.209 has the purpose of protecting the public. 646 N.W.2d at 73. While section 321.555(1) similarly deals with license revocation, the revocation penalty Johnston suffered was greater in length than the revocation at issue in *Schilling*. Johnston contends that his five-year suspension "serves to increase punishment by punitively restricting his license," strenuously noting that his revocation is four years longer than the one-year revocation at issue in *Schilling*. He cites no support for the contention that his longer revocation serves the purpose of punishment. We decline to depart from *Schilling* on account of the longer period of license revocation here at issue, and we conclude section 321.555(1) has the purpose of protecting the public.

Having concluded that section 321.555(1) has the purpose of protecting the public, we need not proceed to consider the four-factor *Schilling* test because the *Schilling* court determined that a deferred judgment for eluding under section 321.279 satisfies the four-factor test. 646 N.W.2d at 73. We therefore conclude that Johnston's deferred judgment for his violation of section 321.279 is a final conviction for purposes of section 321.555(1).

Johnston also argues *Schilling* was overturned by *State v. Tong*, 805 N.W.2d 599 (Iowa 2011). We disagree. *Tong* did not expressly overrule *Schilling*, and the statute at issue in *Tong*, which prohibits felons from possessing firearms, is unrelated to the instant case. Additionally, the *Tong* court described the felon-in-possession statute as having the dual purpose of increasing punishment and protecting the public. *Id.* at 602. Johnston concedes the *Tong* court dealt with a provision that served the dual purposes of public protection and increased punishment, but he contends his five-year revocation is punitive in a way the one-year revocation in *Schilling* was not. We have already rejected this argument in applying *Schilling*, finding the purpose of section 321.555(1) is limited to the protection of the public. Accordingly, we disagree that *Tong* impacts our analysis here, as *Schilling* dealt with the same eluding statute with which Johnston was charged. We find *Schilling*'s holding directly applicable to Johnston.

Johnston points out that he successfully completed probation on May 6, 2019, and the eluding charge was subsequently expunged. In *Tong*, the court held that "a deferred judgment constitutes a conviction for purposes of section 724.26 where the defendant (as here) has not completed his term of probation." 805 N.W.2d 599, 603. Applying such rule, Johnston's deferred judgment was a conviction for purposes of section 321.555(1) until he completed his probation. Because the agency's revocation decision issued one year prior to Johnston's successful completion of probation, the agency's use of Johnston's deferred judgment to revoke his license under Iowa's habitual-offender statute was not erroneous. *See Tong*, 805 N.W.2d at 603.

### b. Time Period for Habitual Offenses

We next consider whether the date of offense or date of conviction should be used for purposes of the time limits in section 321.555(1).  Johnston argues the agency and the district court improperly used the dates of his offenses instead of the dates of his convictions for purposes of measuring the six-year period in which convictions accumulate under section 321.555(1).[3]  This argument was squarely addressed and rejected in *State v. Phelps*, 417 N.W.2d 460, 461–62 (Iowa 1988), where the appellant's license was revoked under section 321.555(2).

In *Phelps*, the court found that the legislature intended to count offenses, rather than convictions, for purposes of repeat-offender statutes.  417 N.W.2d at 461 ("In *State v. Dague*, 274 N.W.2d 293 (Iowa 1979), this court interpreted section 321.555(2) to require six convictions within the two-year period rather than simply the commission of six offenses during that period.  Subsequent to *Dague*, however, our legislature amended section 321.555 . . . .").  Noting the legislature's move to require six *offenses* instead of *convictions* within the statutory period, the *Phelps* court held that the revised language—"six or more of any separate and

---

[3] As relevant here, section 321.555 provides as follows:

As used in this section . . . "habitual offender" means any person who has accumulated convictions for separate and distinct offenses described in subsection 1, 2, or 3, committed after July 1, 1974, for which final convictions have been rendered, as follows:

    1. Three or more of the following offenses, either singularly or in combination, within a six-year period:

    . . .

    b. Operating a motor vehicle in violation of section 321J.2 or its predecessor statute.

    . . .

    g. Eluding or attempting to elude a pursuing law enforcement vehicle in violation of section 321.279.

distinct offenses within a two-year period"—referenced "the time within which the violations, not convictions, must have occurred." *Id.* at 462. The court observed that the qualifying phrase "within a two-year period" follows the term "offenses." *Id.* at 462. The court also commented that the phrase "for which final convictions have been rendered" is not qualified by a time frame. *Id.* at 461.

While the *Phelps* court was tasked with considering section 321.555(2), not section 321.555(1), we think its analysis applies equally to subsection one. As in subsection two, the phrase "offenses" in subsection one is followed by time-qualifying language: "Three or more of the following offenses, either singularly or in combination, within a six-year period[.]" Iowa Code § 321.555(1). Also, the phrase "for which final convictions have been rendered" precedes all subsections and therefore applies equally to subsections one and two. The *Phelps* court's comment that this phrase is not qualified by a time frame thus applies here. We conclude that the holding of *Phelps* applies to section 321.555(1); it is the date of the offense, not the date of conviction, that governs application of section 321.555(1). We reject Johnston's argument to the contrary.

**Conclusion**

Considering each argument individually, we reject as unpreserved Johnston's novel claim that an additional "pursuing" element exists in section 321.555(1)(g). We conclude based on Iowa precedent that Johnston's deferred judgment for an eluding charge was validly used to revoke his license pursuant to section 321.555. Iowa precedent further demands our conclusion that the tribunals below properly used the dates of Johnston's offenses for purposes of determining

that Johnston was a habitual offender.  We affirm the district court's dismissal of Johnston's petition.

**AFFIRMED.**